Good afternoon. May it please the Court, Jonathan Libby appearing on behalf of the appellant, Brett Hagenno. Your Honors, Brett Hagenno's testimony at his state murder trial was more than sufficient to entitle him to a failure of defense instruction on involuntary mass slaughter, and the failure to give such an instruction violated his right to due process. Moreover, because the California Court of Appeals' conclusion that he was not entitled to the instruction was based on an unreasonable determination of the facts, Mr. Hagenno qualifies for habeas relief under AEDPA. Under California law, all that was required to mandate an instruction on involuntary mass slaughter was substantial evidence sufficient to permit a jury to conclude that the defendant acted without an intent to kill. In rejecting Mr. Hagenno's argument, the State Court of Appeal concluded that no instruction was warranted here based on a finding that he had testified that he had waited until the victim, Rick Mendoza, had backed off at least a couple of feet, that he aimed the gun at Mendoza, and then he pulled the trigger. Based on that finding, the State Court concluded that he had acted decisively in order to kill or inflict serious bodily injury, and so concluded that he was not entitled to the involuntary mass slaughter instruction. Did he ever suggest or say it was accidental? He did. He did. Mr. Hagenno expressly testified that when he shot Mr. Mendoza in the course of a violent struggle, it was entirely unintentional and accidental. Page 892 of the excerpts, he was questioned by the prosecutor on cross-examination. Question. Was it an accident pulling the trigger? Answer. Yes. Question. Sir is saying it was not intentional at all pulling the trigger. Answer. No, I never thought about pulling the trigger. He explained throughout his testimony that there was this violent struggle. He was literally pulled through the window of a van. He was halfway out the window, up to his waist, so hanging out the window when Mr. Mendoza is pulling him out, and that as a reaction after having been punched through the window in the face several times, he was dazed and confused, and without even thinking, he grabbed the gun that was in Mendoza's waistband, and the gun went off and shot him. He said it was not anything he had thought about doing. It happened pretty much immediately, within a split second, and that he didn't even remember firing the gun, just that the gun went off. He indicated he felt terrible about what had happened, and if he could have undone it, he certainly would have. He was expressly asked whether he aimed the gun at Mendoza. He said no, and that's at page 856 of the excerpts. He was expressly asked whether he waited for Mendoza to back off before he shot him. He said no. So the State court's findings were entirely directly opposite to what Mr. Higino actually had testified to. All of this provided more than substantial evidence to justify an involuntary manslaughter instruction, and the failure to give the requested theory of defense instruction violated his right to due process. All right? And on that, I'll reserve the balance of my time. Okay? Thank you. All right. May I please support Margaret Maxwell on behalf of the Warden Yarborough? I want to first apologize to the Court for not having someone here at 9 o'clock when the calendar started. Ms. Jackson, who is assigned to this case, was ill, and as I said, I just apologize that we don't have someone here on time. You don't have to apologize a bit. We're impressed you were able to come so quickly. Go ahead. Thank you. And I apologize to counsel as well. We'll give you a certificate of good behavior. Thank you. I also apologize because I'm not going to be as prepared as Ms. Jackson would have been today. The first argument I'd like to make is that the issues that were certified for this appeal, the question whether the Sixth Amendment governs the particular instructional error problems in this case, are TIGA-barred, and that certainly there's no U.S. Supreme Court precedent, which we must look to under the AADPA, to that would control the types of instructional error that's alleged to have occurred here, those being the failure to instruct on the lesser included offense of involuntary manslaughter. And what is the response on that, since he did claim that it was unintentional and it was an accident? Why wouldn't he be entitled to an instruction? Well, under state law, under the substantial evidence test that California employs to require instructions on lesser included offenses, you don't pick out isolated buzzwords. The fact that he might have said, oh, it was an accident, or actually what he said was, you know, I believe it's he accidentally pulled the trigger. I'm reading from 892. Was it an accident pulling the trigger? Yes. So you're saying it was not intentional at all, pulling the trigger? No. I never thought about pulling the trigger. So this was not something then you were doing to protect yourself? It was an accident? Well, it's not, again, you have to look at the testimony. You didn't just happen to say it. It was a focus of questioning. It was a focus of questioning. The court of appeal below and the district court looked at essentially the totality of his testimony, rather than saying, did he use the buzzword accident? It's like, what was he really saying happened? And what he said happened was that he has his girlfriend signal the victim to stop. The victim comes over. According to his version of the facts, the victim assaults him through the window. He grabs the gun from the victim's waistband. And then after the victim has moved away from him several feet, that is when the shot is fired. When you look at that scenario, this isn't the movie scenario of a struggle over a handgun, where the term accident means you didn't intend to fire the gun. The circumstances here are that there was no more threat, and the gun was fired. Nobody knew there was no more threat. I mean, you get a guy breaks the window, pulls you out. Well, he didn't break the window because the window was rolled down. Whatever it was, he's pulling you out of the car. Right. That, of course, was... And then why do you think he's pulling him out of the car? To kiss him or tell him how much he loves him? He pulled him out of the car. And you've got to be pretty scared, and your adrenaline is flowing. He sees a gun in his waist, and he pulls the thing out. He thinks the guy's going to kill me. Well, and again... That's the way to think about it, I think. And I think that his testimony, Mr. Regina's testimony, really went toward what California would recognize as either self-defense, pure self-defense, or imperfect self-defense, which is not involuntary manslaughter. That's voluntary manslaughter. And that essentially was the defense that was presented at trial, because Mr. Well, he said that he wasn't intending to pull the trigger, and the gun just fell off. That's not exactly what he said. It isn't exactly what he said. He said he was terrified. He thought this guy was going to kill him. Yeah. I mean, again, he was... So he took the gun from the guy. The guy backed away. And then he uses the self... And he shot him. And then he has this self-serving explanation when probed, you know, did you mean to pull the trigger? Well, you know, no, I didn't mean to pull the trigger. His testimony at trial was really targeted toward first-degree murder, premeditation, and deliberation. Did he premeditate killing the victim? No. That's what... I accidentally pulled the trigger. I didn't think about it. I didn't spend some time developing it. That is essentially the basis of his defense at trial. It's not a first-degree murder. What it is is a voluntary manslaughter. Because what he did was he killed a man under circumstances where he says he believed, you know, his life was in danger, but objectively he shouldn't have done it. He shouldn't have pulled that trigger. That's a voluntary manslaughter under California law. Involuntary manslaughter, it's not so simplistic to say it's just a matter of removing the intent to kill. There are other requirements for an involuntary manslaughter. You have to be performing, you know, an unlawful act in a lawful act in a manner which might produce death in an unlawful manner. Or you have to be committing an unlawful act not amounting to a felony. So he doesn't meet... This is not an involuntary manslaughter in this case. The question, though, if the court, you know, finds that more selection should have been made to individual words and we should isolate this from the context where the testimony was given, the question then is under correct. Is this error such that it's, you know, created a substantial and injurious effect on the verdict? And the warden submits it does not. And again, it's because of the context, the totality of the circumstances. There wasn't enough evidence here to support giving that instruction on involuntary manslaughter. Our position is there wasn't enough evidence, there was not enough evidence to give the instruction. But if you find, if you assume there's enough evidence for involuntary manslaughter, then you stop looking at the evidence in the light most favorable to Mr. Hugino. You look at the totality of the evidence where there were other prosecution witnesses who testified things didn't happen the way he said it happened. Witnesses who said that he shot the victim before the victim ever reached the car. You look at the totality of the evidence, even considering what he said here, would giving an instruction on involuntary manslaughter have resulted in a verdict more favorable to him? And the California Court of Appeal, the district court, weighed the evidence and concluded it would not. And we submit that that's the correct finding. Well, that's very good. And I just wonder what your performance would have been if you had been a little better prepared. I apologize. I think you did pretty well. Very good, yeah. I wanted to see. Jerry Brown, you're probably the best one he's got up there. Thank you. Well, unless the Court has any questions, further questions, I'll submit. I'm serious when I say that. Thank you. I see him off-talent, but he never listens to me anyway. Your Honors, as Opposing Counsel noted, the Court was supposed to look at the evidence in the light most favorable to the defendant. Certainly there was sufficient evidence in this record to justify involuntary manslaughter instruction. There was a struggle here. There was a violent struggle here. He's being pulled out of a car. Well, let's, I mean, you've argued that. So what about the harmless error issue? Well, in terms of harmless error, it was certainly not harmless. Remember here, the jury asked to be instructed on involuntary manslaughter. They had initially been instructed on manslaughter in general, and then they gave a, they got a more specific instruction on voluntary manslaughter. But involuntary manslaughter had been mentioned to them initially. After several days of deliberations, they came back with a note and said, can you please instruct us on involuntary manslaughter? Is that something that we can consider? The defense then renewed its request for the instruction. And again, the Court denied it. So clearly this jury believed that it was certainly having difficulty deciding whether or not voluntary manslaughter was the appropriate charge here and wanted to consider involuntary manslaughter. Could that have had a substantial and serious effect in the outcome of the case? Absolutely. And for that, I'd refer to a recent decision from this Court, United States v. Arndt, which talks about what a jury is left with when it's not given the choice that it may want between voluntary and involuntary manslaughter. And that case is second to Bruce. Okay. Thank you, Your Honors. Thank you very much. Good job. And this Court for this calendar will adjourn. All rise. This Court is adjourned. Thank you.
judges: Pregerson, Hawkins, Fisher